COOPER and another against HENDERSON.

IN ERROR.

THIS was an ejectment in the Common Pleas of *Adams* county, brought by *Henderson* the plaintiff below, to recover a tract of land in right of *James Cooper* an insolvent debtor. The insolvent was discharged by the Court of Common Pleas of *York* county on the 5th of *December* 1797, and on the same day assigned " all his property real " and personal," to *Jacob Rudesell, William Gilleland* and *George Laskell,* who were appointed by the Court to be trustees for the benefit of his creditors, according to the act of 14th *February* 1729—30. The property in dispute was not contained in the schedule delivered into Court by the insolvent. On the 8th of *June* 1799, a certain *George Kern* appeared in Court, and made oath that the assignees of *James Cooper* had refused to act in execution of their trust; whereupon the Court appointed the said *Kern* and *Henderson* the plaintiff, as trustees in the place of those who had refused. *Kern* died, and this action was brought by *Henderson,* who had never received a conveyance of *James Cooper's* property, either from himself or his assignees.

Upon the trial below, the defendant's counsel prayed the Court's opinion, on the three following points, on all of which it was delivered in favour of the plaintiff, and filed of record.

1. Whether the property for which the suit was brought, passed by *James Cooper's* deed of assignment, not having been mentioned in the schedule of his estate, exhibited to

*Chambersburg,
Saturday,
October 9.*

The Courts of
Common Pleas,
have power under
the act of 14th
*Feb.* 1729—30,
for the relief
of insolvent
debtors, to ap-
point new
assignees, where
those first ap-
pointed refuse
to act; and to
compel the first
assignees to con-
vey their interest
to the new. But
the mere appoint-
ment of new
assignees by the
Court does not
vest the insol-
vent's lands in
them, so that
they may support
an ejectment.
The trustees of
an insolvent
debtor may insti-
tute an eject-
ment, without
stating their cha-
racter upon the
record.
The assignment
of an insolvent
debtor passes all
his property,
whether men-
tioned in the
schedule annexed
to his petition, or
not.

the Court of *York* county, at the time of his petitioning to be discharged.

2. Whether the trustees appointed by the Court in the room of those who had refused, had such an estate vested in them, as would enable them to support an ejectment.

3. Whether the proceedings were not erroneous, because the plaintiff did not shew either by his writ or declaration, that he sued in his own capacity as trustee?

In this Court the first exception was given up: but the other two were insisted upon by

*Maxwell* and *J. Riddle* for the plaintiffs in error.

*Dobbins* contra.

TILGHMAN C. J. after stating the facts and exceptions, delivered his opinion.

1. The first exception has been abandoned. There was nothing in it, because the deed of assignment contains general expressions, embracing all the property of the insolvent, whether mentioned in the schedule or not.

2. The act of assembly contains no provision for the appointment of new trustees in case the first refuse to act, or die. It seems to have been taken for granted, that there never would be a refusal to act, and with proper care there never could, because the intended trustees might be consulted before the assignment was executed. But it is said that the assignment having been executed, it is necessary that the Court should have the power of making a new appointment, otherwise the trust could not be carried into effect. There certainly would be a great convenience in the power to make a new appointment, and I have no doubt that within the spirit of the law the Court possess it; but it does not follow that the estate shall be vested in the second trustees, without a conveyance from those persons in whom it had been vested by the assignment. There can be no necessity for that, because there is no reason to presume that such conveyance would not have been made if the Court had ordered it; or even without such order, if application had been made to the assignees, and information given them of the new application. In *England* the estate of a bankrupt becomes vested in the commissioners,

by the commission of an act of bankruptcy, *ipso facto*. But this is by the express provisions of an act of parliament. Our act of assembly directs the conveyance to be made by the insolvent debtor himself. But suppose the assignees should refuse to act, and also refuse to execute a reconveyance? If the Court have power to order a conveyance, they have power to compel obedience to their order. If they have no power to make the order, the matter is at an end. That point however is not before us. It does not appear that the assignees in this case, ever refused to convey to the plaintiff, or were ever applied to for that purpose. The plea of necessity therefore, on which the plaintiff has rested his case, falls to the ground.

3. All the cases cited by the plaintiff's counsel, in which the person bringing an action, has been obliged to shew in his writ or declaration, the right by which he brought it, are of personal actions. But it is not so in suits for the recovery of land. Our ejectments are regulated by a late act of assembly, which prescribes the form of the proceedings, and the plaintiff has pursued it word for word. I am of opinion therefore, that in this respect all is right. But as the plaintiff in error has made good his second point, the judgment must be reversed, and a new trial ordered.

YEATES J. The counsel of the plaintiffs in error have very properly abandoned one of the errors assigned, that the assignment of *James Cooper* previous to his discharge by the insolvent act, did not include all the property he had at the time. The assignment is as comprehensive as words can make it.

I can see no reason for the exception, that *Henderson* should shew on the face of the record, in what capacity or character he brought his suit. I see no necessity for it, nor know any such practice. Where lands have been conveyed to trustees for special purposes, the trustees may support ejectment in their own names, as having the legal estate. The light in which they claim, appears when the trust deed is shown in evidence, and no ill consequences can possibly arise from its not appearing at an earlier stage of the cause.

I fully agree that the Courts of Common Pleas under the old act of 14th *February* 1729—30, " for the relief of in-

1813.

COOPER
et al.
v.
HENDERSON.

"solvent debtors," (1 *Smith's Laws* 181.) possess an inherent power to appoint new assignees of the property of an insolvent debtor in certain cases. The act is silent in that particular, but its object could be effectuated in no other mode, where the former assignees have died or refused to act. Chancery will never suffer a trust to be disappointed for want of a trustee. Where trustees decline the trust, equity will oblige them to assign to others appointed by the lord chancellor. But here, under the express terms of the second section of the act, "the estate, interest and property " of the lands, goods, debts and effects so assigned, shall be " vested in the person or persons to whom such assignment " shall be made, who may take possession of and sue for the " same in his and their own name or names, in like manner " as assignees or commissioners of bankrupt &c." How then has this interest been divested from the assignees first appointed by the Court of Common Pleas of *York* county? By the express terms of a positive law, all the interest of the insolvent became vested in them. They were in full life, and the Court of Common Pleas in *York* county had in my idea, an unquestionable right to call them before the Court, and oblige them to reassign their interest in the property of the insolvent, in case they refused to accept and act under the trust. How can the substituted assignees or the survivor of them, shew this interest to be in themselves without such reassignment? I cannot conceive it to be possible. Efforts at least should have been made to procure the reassignment. As matters then stood, it was competent to the defendants below, who rested on their possession, to shew an outstanding title adverse to the plaintiff in ejectment. In this point of view, I think the opinion of the Court below was erroneous. Unless the substituted surviving assignee, could deduce his interest under his predecessors or the survivors of them, I think he was not entitled to recover; and I am of opinion that the judgment of the Court below be reversed, and a *venire facias de novo* be awarded.

BRACKENRIDGE J. concurred.

Judgment reversed.